UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TODD H. MERCER                               CIVIL ACTION NO. 16-cv-0670

VERSUS                                       CHIEF JUDGE HICKS

STEVE PRATOR, ET AL                          MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Todd H. Mercer ("Plaintiff") is a self-represented inmate who was formerly housed as a pretrial detainee at the Caddo Correctional Center ("CCC"). Plaintiff's primary complaint is that, during the approximately one year he was housed at CCC, he was exposed to black mold in the showers and on blue mats provided for sleeping. Plaintiff alleges that the exposure has caused respiratory and other health problems. Before the court are competing motions for summary judgment (Docs. 97 and 100). For the reasons that follow, it is recommended that Plaintiff's motion be denied and that Defendants' motion be granted.

**Summary Judgment Burdens**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict

for either party.  Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

Most motions for summary judgment are filed by defendants, but Plaintiff has filed his own motion in this case.  Plaintiff bears the burden of proving his claims at trial.  To prevail on a motion for summary judgment, he must present evidence that would entitle him to judgment as a matter of law if it went uncontroverted at trial.  International Shortstop, Inc. v. Rally's, Inc., 939 F.2d. 1257, 1264 (5th Cir. 1991).  All facts and inferences are viewed in the light most favorable to the defendant, and all reasonable doubts are resolved in the defense's favor.  Puckett v. Rufenacht, Bromagen & Hertz, Inc., 903 F.2d 1014, 1016 (5th Cir. 1990).

**Relevant Facts**

   **A. The Complaint**

A summary judgment challenge requires one to go beyond his complaint and present competent summary judgment evidence, but a summary of the allegations in the complaint is useful as a background for the dispute.  Plaintiff's original complaint named as defendants Caddo Parish Sheriff Steve Prator, Bossier Parish Sheriff Julian Whittington,

and the wardens at the jails in those two parishes. Plaintiff alleged that his primary complaint was "gross negligence and endangerment with exposure to black mold" while housed at the two facilities. He alleged that at CCC the showers had black mold growing on the tile, in the mortar, and on the floors and ceilings. He also alleged that blue mats provided for sleeping were "covered with black mold." He made similar allegations regarding the Bossier jail. Plaintiff asked that the court order the removal of the harmful materials and award him $20,000,000 in damages.

Plaintiff later filed an amended complaint and stated that he would continue this civil action against Sheriff Prator and the CCC officials, but he would pursue his complaint regarding conditions at the Bossier jail in a separate civil action. He later filed that action, and Magistrate Judge Hayes recommended it be dismissed as frivolous and for failing to state a claim on which relief could be granted. Mercer v. Whittington, 5:16-cv-1272, 2016 WL 8222012 (W.D. La. 2016). Judge Foote adopted that recommendation and dismissed the case. 2017 WL 507621 (W.D. La. 2017).

Plaintiff alleged, with respect to the Caddo Parish defendants, that he was housed at CCC from August 6, 2014 through October 15, 2015. He claimed there was "constant daily exposure to black mold" during those 14 months from the mold found in the shower areas and on the blue mats. He claimed that the exposure caused him to suffer chronic dry cough, sneezing, irritation to his eyes and mucous membranes, and related symptoms. Plaintiff later filed a clarification as to the defendants who are named in this civil action. Doc. 40. Those six defendants—Sheriff Prator, Commander Wyche, Sergeant Dunn,

Sergeant Hall, Deputy Fair, and Deputy Herrington—have joined in a motion for summary judgment.

### B. Defendants' Summary Judgment Evidence

Sheila Wright has been the CCC Health Services Director since 1994. Defendants offer her affidavit in support of their motion. Ms. Wright testifies that she is in a position where she would be aware if inmates were diagnosed with respiratory problems associated with mold. She states that there "has never been such a diagnosis" by a physician or other medical personnel to her knowledge. With respect to Plaintiff, he "did not ever report any difficulties related to mold, nor did he report any respiratory problems" while at CCC. Wright's affidavit and Plaintiff's CCC records are Exhibit 1 to the defense motion.

A CCC nurse conducted an inmate medical screening of Plaintiff when he was booked in August 2014. The report from that screening shows that Plaintiff told the nurse that he drank a fifth of whiskey per day, used cocaine and methamphetamine, was bipolar, and had attempted suicide several times. He reported dental problems and a chronic cough.

Defendants and Plaintiff submit a copy of a report from an ear, nose, and throat physician that was prepared in 2004 after a workplace accident where Plaintiff was using a cutting torch and some hot iron landed in his left ear canal. The report described ongoing problems with infections, headaches, nasal drainage, and a cough. The physician stated that the drainage did not appear to be caused from the injury, but ear aches were likely caused by the injury.

Ms. Wright attached a copy of the six kite communications Plaintiff filed during his stay at CCC. None of them concerned complaints about mold or related issues. They were

regarding matters such as a broken tooth, a request to move from mental health to general population, and a request to participate in a counseling group. Ms. Wright also attaches Plaintiff's medical records, which include his sick call requests. They show that Plaintiff submitted requests for treatment regarding matters such as a broken tooth and lower back pain. Ms. Wright states that none of the sick call slips related to mold exposure or any respiratory problem. Plaintiff was treated by the staff, and he was provided over-the-counter medications for dental issues and a cold.

Defendants attach as Exhibit 2 copies of medical records produced by the Bossier Parish sheriff related to Plaintiff's stay in that facility after he was transferred from CCC. Those records show that Plaintiff made a sick call request in which he complained that his allergies were elevated. He stated that he had been diagnosed with rhinitis years earlier and had used medication when there were raised levels of pollen and ragweed in the air. The sick call request noted that there was "mold present in the dorm and on the mats," and Plaintiff complained that it was affecting his ability to breathe. Plaintiff also filed more than one kite in Bossier in which he complained of exposure to mold in the dorm and on the mattresses. He asked for medications such as he had used in the past to treat his sinus issues.

### C. Plaintiff's Summary Judgment Evidence

Plaintiff points out that one of the sick call slips he submitted at CCC stated that his reason for submitting the slip was "head stopped up, throbbing, body aches, sneezing, sore throat and coughing." Plaintiff states in one of his briefs, "These are all indicative indications of mold exposure, though he did not know at the time." Plaintiff wrote that he

believed he had the flu "because he did not yet know what the signs of mold exposure were." The medical department responded to the sick call slip by providing Plaintiff medication for his flu-like symptoms, but his condition persisted. Doc 105, pages 2-3.

Plaintiff has attempted, during the course of this case, to file body fluid specimens that he contends are discharges related to his mold exposure. The court has prohibited him from submitting such physical evidence, but Plaintiff has been allowed to file photographs of the fluids. Doc 106.

Plaintiff has also submitted a copy of an article written by Dr. Joseph Mercola regarding the danger of exposure to molds in the home, school, or workplace. Mercola states that up to 40 percent of schools and 25 percent of homes have mold infestations. His article describes a number of serious health problems that can be caused by mold exposure. Some of the potential harms are mold-induced sinusitis, cold and flu symptoms, respiratory problems, and sore throat. Doc. 101, Exhibit 6.

Plaintiff has also submitted notarized (but not sworn) answers to written questions that he posed to Dr. Mercola. Doc. 101, Exhibit 7. Plaintiff began by asking Dr. Mercola if he would be considered an expert concerning mold exposure to humans, and Dr. Mercola answered, "No, I would not be considered an expert concerning mold exposure to humans." Mercola did, however, answer Plaintiff's other questions. He stated that 14 months of exposure could cause mold poisoning and aggravate preexisting rhinitis; long-term exposure to certain kinds of mold could aggravate bipolar depression; exposure could negatively affect a person with hepatitis C (which Plaintiff has); and symptoms such as sinus infection and sinus headache are consistent with mold exposure. Dr. Mercola also

stated that most patients typically do not require ongoing treatment if they are removed from toxic exposure and their foundational health is improved.

**Conditions of Confinement Claim**

Plaintiff represents that he was a pretrial detainee from the time of his arrest and booking at CCC in August 2014 until he was sentenced in December 2014. He left CCC in late 2015. The claims of convicted inmates are presented under the Eighth Amendment, but pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment. Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 419 (5th Cir. 2017).

Plaintiff makes an uncontested representation that he was a pretrial detainee for at least part of his stay at CCC, so his claims will be analyzed under the Fourteenth Amendment. This does not affect the analysis much, if any, because the Fifth Circuit has held that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc).

Plaintiff alleges that housing him in a facility that contained mold violated his constitutional right to be housed in humane conditions of confinement. The Constitution does not mandate comfortable prisons, but it does not permit inhumane ones. Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994). The Eighth Amendment requires that prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical

care, and they must take reasonable measures to ensure the safety of inmates. Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004).

A prisoner must meet two requirements to establish an Eighth Amendment violation. First, his deprivation must be, objectively, sufficiently serious. Farmer, 114 S.Ct. at 1977. The prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Id. The inmate must show that he is incarcerated "under conditions posing a substantial risk of serious harm." Farmer, 114 S.Ct. at 1977, citing Helling v. McKinney, 113 S.Ct. 2475, 2481 (1993).

The second requirement is that the prison official must have a sufficiently culpable state of mind. In prison conditions cases, that state of mind is one of deliberate indifference to inmate health or safety. Wilson v. Seiter, 111 S.Ct. 2321, 2326 (1991). A prison official acts with deliberate indifference if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Farmer, 114 S.Ct. at 1984.

Defendants argued in their motion for summary judgment that they were not deliberately indifferent to Plaintiff's medical needs. Plaintiff responded: "Plaintiff wishes to make clear that nowhere in his claim against Caddo does he allege these Defendants were indifferent towards his medical care." Doc 105, page 3. Rather, he urged that his current state of health was related to his first exposure to mold while housed at CCC. Plaintiff continued: "His claim is negligence on the part of these Defendants to comply with Federal statutes to maintain a safe, sanitary and healthy environment at their facility."

He adds that he wishes to "make clear" that his claim of medical neglect is against the nurse at the Bossier jail for delaying his medications.

Plaintiff's complaint did not make a specific allegation against any of the six named defendants that would indicate any defendant knew about the alleged mold and any risk of harm that it posed to Plaintiff. The defendants were simply listed as parties, and the body of the complaint set forth allegations that generally described conditions at the jail. No individual defendant was mentioned. Accordingly, Plaintiff has neither alleged facts nor created a genuine dispute of material fact as to whether any named defendant was deliberately indifferent to his health or safety.

The best evidence Plaintiff can point to is the sick call request that noted he had cold-like symptoms. But even Plaintiff has admitted that he had no idea at that time that the symptoms may have been related to mold exposure. That is not sufficient evidence to survive a summary judgment challenge to a claim that requires a showing of deliberate indifference to a substantial risk of serious harm.

Plaintiff asserts that Defendants were negligent in their maintenance of the jail. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." Baker v. McCollan, 99 S. Ct. 2689, 2695 (1979). A mere negligent act that causes unintended injury does not violate the Constitution. Daniels v. Williams, 106 S.Ct. 662 (1986) (affirming dismissal of inmate's claim that he slipped on a pillow negligently left on the stairs by a deputy); Andrews v. Belt, 274 Fed. Appx. 359, 360 (5th Cir. 2008) ("Andrews's assertion that the defendant may have known about the leaky toilet but failed to repair it at most alleges negligence,

which is not actionable under § 1983"). Similarly, the mere failure to alleviate a significant risk that a jail official should have perceived, but did not, is insufficient to show deliberate indifference <u>Domino v. The Texas Department of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001).

Defendants have directly challenged Plaintiff's ability to prevail on a claim related to his alleged mold exposure. Plaintiff has not responded with competent summary judgment evidence that would create a genuine dispute as to whether any named defendant was deliberately indifferent to his health and safety or otherwise acted or failed to act in a way that could give rise to liability under Section 1983. Accordingly, Defendants are entitled to summary judgment with respect to the mold exposure claims.[1]

**Secondary Claims**

    **A. Pleadings Challenge**

Plaintiff's complaint labeled the mold exposure as his "primary claim," but he also provided at the end of his complaint a "list of secondary claims." They were for excessive cold/inadequate ventilation, profiting from pre-stamped envelopes, overcrowding of cells, excessive noise levels, and charging indigent inmates for toiletry items. Plaintiff later stated that his excessive noise claim did not apply to the Caddo Parish defendants. Doc. 16, page 2. In some filings, he complains of discrimination against mental health inmates.

---

[1] This is consistent with Magistrate Judge Hayes' recommended dismissal, adopted by Judge Foote, of Plaintiff's Bossier Parish case. Judge Hayes cited several decisions, some of which involved black mold, for the proposition that "the jurisprudence has repeatedly held that the presence of mold and dampness in a prison setting does not render an inmate's confinement unconstitutional." <u>Mercer</u>, 2016 WL 8222012, *3.

Defendants challenge the list of secondary claims on the pleadings and note that Plaintiff does not allege the role that any named defendant played in connection with the alleged violations. "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007).

Plaintiff's complaint did not allege any facts to give context to these secondary claims or allege how they actually harmed Plaintiff. The claims were merely listed as above. The lack of supporting facts means that the list does not state a plausible claim on which relief can be granted. And the lack of allegation that any defendant was personally involved in these matters is fatal to the claims. Thompson v. Steele, 709 F.2d 381, 382 (5th Cir.1983) ("Personal involvement is an essential element of a civil rights cause of action.")

**B. Summary Judgment Challenge**

Defendants made an alternative attack on these claims based on lack of factual support. They presented a sworn statement from the compliance coordinator at the jail who stated that the fire marshal and Department of Health and Hospitals had approved the total inmate population at CCC and the use of "stack-a-bunk" beds to increase the capacity of cells from two men to three. Doc. 100, Ex. 3. With respect to hygiene materials, the coordinator stated that inmates are given an indigent kit during booking, and it includes a bar of soap and two shampoo packets along with other hygiene items. Inmates tell the

commissary clerks if they would like to purchase an indigent kit and, if the inmate account qualifies, the inmate will be given the kit and his account will be charged. The coordinator's statement does not directly address what happens if an inmate lacks funds in his account. The statement is not entirely clear, but it seems to imply that an indigent defendant is provided the kit, and his account is charged, with the charge to be collected from any future funds the inmate may acquire.

Plaintiff offered no competing evidence regarding his claim of overcrowding at the jail. With respect to hygiene, he responded that "he does not contest that the supplies are provided weekly," but he complained that he was charged for them. Plaintiff offered no evidence that he was required to pay for a hygiene kit or was otherwise deprived of the "basic elements of hygiene" as required to state a constitutional conditions of confinement claim. Ruiz v. LeBlanc, 643 Fed. Appx. 358, 361-62 (5th Cir. 2016) (no violation when inmate was initially provided, and could have purchased, additional toothpaste); Daigre v. Maggio, 719 F.2d 1310, 1312 (5th Cir. 1983) (denial of soap and towels in isolation cell not a violation when running water was provided in generally sanitary conditions). Any claim related to overcrowding or the hygiene kit should be dismissed as to all defendants.

Defendants are also entitled to summary judgment on Plaintiff's other secondary claims. Defendants attacked all claims them in their motion and argued that Plaintiff could not show actual harm stemming from any of his many claims. That put the burden on Plaintiff to present competent summary judgment evidence that would allow a verdict in his favor on those claims. Plaintiff has failed to meet that burden with respect to his

complaints about cold, crowding, discrimination against mental health inmates, or any other secondary claims.

Accordingly,

It is recommended that Plaintiff's **Motion for Summary Judgment (Doc. 97)** be **denied** and that Defendant's **Motion for Summary Judgment (Doc. 100)** be **granted** and that all claims against all defendants be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of October, 2018.

Mark L. Hornsby
U.S. Magistrate Judge